Filed 8/1/25  In re M.H. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re M.H., a Person Coming Under the Juvenile Court Law. | B341769 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.S.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 22CCJP04036A) |

APPEAL from orders of the Superior Court of Los Angeles County. Kristen Byrdsong, Commissioner. Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

J.S., the paternal grandmother of M.H., appeals from the orders denying her two petitions under Welfare and Institutions Code[1] section 388 for visitation with the child. When J.S. filed these section 388 petitions, it had been approximately one year since the juvenile court terminated parental rights over M.H., and ordered adoption by the maternal grandparents as the child's permanent plan. On appeal, J.S. argues the juvenile court erred when it summarily denied her petitions and granted the maternal grandparents control over any visitation decisions. We conclude the juvenile court did not abuse its discretion in denying J.S. section 388 relief because it reasonably could find that court-ordered visitation with J.S. late in the dependency proceedings was not in M.H.'s best interest. We accordingly affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A portion of the factual and procedural background in this matter is taken from this court's prior opinion in case No. B333184. (*In re M.H.* (Aug. 30, 2024, B333184) [nonpub. opn.].) On our own motion, we take judicial notice of this opinion. (Evid. Code, §§ 452, 459.)

**I.   Section 300 petition**

W.Z. (Father) and A.H. (Mother) are the parents of M.H., a boy born in October 2022. Father is deceased and has no other children. Mother has five older children, four of whom were prior dependents of the juvenile court. This matter came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) when both Mother and M.H. tested

---

[1]     Unless otherwise stated, all further undesignated statutory references are to the Welfare and Institutions Code.

positive for amphetamine at the child's birth.  Following the birth, DCFS detained M.H. from Mother, and placed the child with the maternal grandparents, T.V. and R.V.  The maternal grandparents also have custody of Mother's five older children through legal guardianship or adoption.

On February 1, 2023, the juvenile court sustained a section 300 petition for M.H. based on Mother's substance abuse, mental and emotional problems, and history of domestic violence with a male companion.  The court removed M.H. from Mother's custody, and bypassed reunification services for her.  DCFS began assessing adoption by the maternal grandparents as M.H.'s permanent plan.

## II.     J.S.'s visitation with M.H.

On February 1, 2023, the same date that it sustained the section 300 petition, the juvenile court also ordered visitation between M.H. and his paternal grandmother, J.S.  The record does not disclose the specific terms of the visitation order other than that J.S.'s visits would be unmonitored, the exchange would occur at a halfway point, and DCFS had the discretion to liberalize the visits.

The following day, DCFS provided J.S. with a visitation schedule.  Under the initial schedule, J.S. would have unmonitored visits with M.H. every other Sunday starting on February 5, 2023.  On February 14, 2023, DCFS decided to gradually liberalize J.S.'s visitation, first to weekly Sunday visits, then to overnight weekend visits, and finally to alternating week-long visits.  Under the amended schedule, M.H. would spend alternating weeks with his maternal and paternal grandparents starting on March 5, 2023.  DCFS noted that the purpose of this change was not to assess J.S. for placement since M.H. was

suitably placed with his maternal grandparents, but to allow the paternal family an opportunity to bond with the child. Following the change, DCFS visited J.S.'s home on two occasions, and observed that J.S. was loving and appropriate with M.H.

As of May 2023, M.H. continued to do well in the maternal grandparents' care and was closely bonded to them. M.H. was receiving Regional Center services, and his caregivers were attentive to his needs. While the maternal grandparents were committed to adopting the child and providing him with a permanent home, J.S. also desired to become M.H.'s prospective adoptive parent and maintain a relationship with him. Both J.S. and the maternal grandparents filed requests to be declared M.H.'s de facto parents.

On May 31, 2023, while the two requests for de facto parent status were pending, DCFS reduced J.S.'s visitation with M.H. to overnight weekend visits twice per month. DCFS explained that alternating weeks between J.S. and the maternal grandparents was not a sustainable visitation plan given M.H.'s need for stability. DCFS determined that reverting to overnight weekend visits would allow J.S. to maintain a bond with M.H. while providing more stability for the child in his placement. When DCFS advised J.S. of the amended schedule, she expressed her belief that the maternal grandmother, T.V., orchestrated the change. DCFS assured J.S. that this was not the case, and that the plan was always to revert to overnight weekend visits once she and M.H. were able to form a familial relationship. The schedule change took effect on June 9, 2023.

In its July 2023 status review report, DCFS recommended a permanent plan of adoption by M.H.'s maternal grandparents. According to the report, M.H. continued to thrive in the home of

4

his maternal grandparents, and they consistently showed themselves to be loving caregivers who treated M.H. as their own son.  In addition, the child had a strong bond with his five half-siblings who resided in the same home.  During their time together, J.S. also demonstrated love, affection, and appropriate care for M.H.  DCFS did not, however, support any change in placement given that M.H. had been in his maternal grandparents' care since his birth.  DCFS instead referred the parties to mediation to establish a postadoption contact agreement.

On July 10, 2023, the juvenile court held a hearing on the two requests for de facto parent status.  After hearing testimony from both T.V. and J.S., the court granted the maternal grandparents' request and denied J.S.'s request.  The court found that M.H. had substantial ties to the maternal grandparents and his half-siblings, and that it would be detrimental to sever those ties.  The court noted that the maternal grandparents had been caring for M.H. since his birth, were well-adapted to meeting his special needs, and were in the process of qualifying as his prospective adoptive parents.  The court also expressed that it was in M.H.'s best interest to have a relationship with both sets of grandparents, and encouraged them to follow through with mediation to achieve that result.

In a last minute information report filed in late July 2023, DCFS stated it was concerned about recent comments that J.S. made regarding adoption by the maternal grandparents.  According to the report, J.S. repeatedly asked the social worker how to stop the adoption and prevent the termination of parental rights.  J.S. also said she wanted to show M.H. photos of Father so that he would know who his "real father" was.  DCFS further

5

reported that T.V. shared a concern about J.S.'s attendance at M.H.'s medical appointments. Because doctors' offices only allowed two adults to be present in the exam room, the maternal grandfather, R.V., could not attend M.H.'s appointments when J.S. was there. DCFS recommended that both T.V. and R.V. be present at the appointments as M.H.'s caregivers, and then relay any pertinent information to J.S.

At a review hearing held on August 7, 2023, the juvenile court ordered that J.S. was no longer allowed to attend M.H.'s medical appointments so that his current caretakers could be present. Given J.S.'s comments about adoption, the court also advised counsel to walk the matter on calendar if any issues with J.S.'s visitation arose.

In September 2023, T.V. raised additional concerns about J.S.'s contact with M.H. T.V. informed DCFS that J.S. continued to show up for M.H.'s medical appointments even when she could not enter the building. J.S. also sent excessive text messages addressed to M.H., who was preverbal. The maternal grandparents reported the current visitation schedule was providing M.H. with more structure and stability, but they wanted discretion over J.S.'s visits as they continued to build a relationship with M.H.'s paternal family.

## III.   J.S.'s first section 388 petition

On September 19, 2023, J.S. filed a section 388 petition to modify the orders made on July 10 and August 7, 2023. In her petition, J.S. stated that she believed she was misrepresented at the July 10 hearing in her goal to adopt M.H., and that she was told after the August 7 hearing that she could no longer attend M.H.'s medical appointments. J.S. also stated that DCFS decreased her visitation with M.H. from alternating weeks to two

overnight weekends per month despite the lack of any issue with the prior schedule.

The relief sought included (1) a legal guardianship over M.H. with the option to adopt, (2) a coguardianship with the maternal grandparents, and (3) the resumption of a consistent visitation schedule and participation in M.H.'s appointments. In support of the petition, J.S. stated: "[M.H.] will be provided a loving, nutritional caring safe home and environment. [M.H.] will receive undivided individual full attention to enhance his cognitive and emotional and mental growth. Additionally, he will have a growing relationship with his paternal family members, aunts, uncles, cousins and grandparents." The record does not show whether J.S. or her attorney served a copy of the petition on all parties.

On September 21, 2023, the juvenile court summarily denied J.S.'s section 388 petition. In its order, the court found that J.S.'s request did not state new evidence or a change of circumstances, and that it constituted an improper ex parte communication.

## IV.   Section 366.26 hearing

On September 26, 2023, the juvenile court held the section 366.26 hearing for M.H. Mother submitted on DCFS's request that the court terminate parental rights over M.H. and free him for adoption by the maternal grandparents. Counsel for M.H. also joined in DCFS's request, noting that the maternal grandparents had been caring for the child since his birth, and were committed to providing him a loving, secure, and stable home. The court terminated parental rights over M.H., ordered adoption as the permanent plan, and designated the maternal grandparents as the prospective adoptive parents. In its minute

7

order for the section 366.26 hearing, the court stated that "[a]ll prior orders not in conflict shall remain in full force and effect."

## V.   J.S.'s prior appeal

On November 8, 2023, J.S. filed an appeal in case No. B333184 from the orders denying her section 388 petition and terminating parental rights.  J.S. argued the juvenile court erred in issuing these orders because it failed to ensure she would have continued visitation with M.H. after the child was adopted by the maternal grandparents.

On August 30, 2024, we affirmed the orders denying J.S.'s section 388 petition and terminating parental rights over M.H. We concluded the juvenile court did not abuse its discretion in denying the section 388 petition because it reasonably could find that J.S. failed to show that there were changed circumstances, or that her request for increased visitation was in M.H.'s best interest.  We further concluded the juvenile court did not err in failing to order postadoption visitation for J.S. at the section 366.26 hearing because the record on appeal reflected that the court's prior order for unmonitored visitation remained in effect following the termination of parental rights.

## VI.   J.S.'s second section 388 petition

On October 4, 2024, following the issuance of our opinion in case No. B333184, DCFS filed a walk-on request with the juvenile court regarding visitation for J.S.  DCFS asked the court to clarify whether it intended to terminate J.S.'s visitation with M.H. when it terminated parental rights, or to maintain visitation pending the finalization of the adoption.  The record does not disclose whether the court took any action in response to DCFS's walk-on request.

8

On October 9, 2024, J.S. filed her second section 388 petition, asking the juvenile court to enforce its February 2023 order for unmonitored visitation. J.S. explained that, on October 10, 2023, the maternal grandmother informed her that she would no longer be having any in-person visits with M.H., and that since that time, her contact with the child had been limited to one telephone call every three months. J.S. also stated that, despite the February 2023 order granting her unmonitored visits, DCFS told her that she would have to work out a visitation schedule with the maternal grandparents. As a result, J.S. had not seen M.H. for almost a year. In her petition, J.S. asserted that she did not intend to interfere with the adoption process, but rather sought to exercise her grandparental rights and to maintain her bond with M.H. in the child's best interest.

On October 11, 2024, the juvenile court summarily denied J.S.'s second section 388 petition, finding M.H.'s best interest would not be promoted by the proposed change. In its order denying the petition, the court also ruled it was "in [M.H.'s] best interest for the current caregivers/prospective adoptive parents to control any [and] all visitation decisions" for M.H.[2]

_____

[2] In her appellate brief, J.S. asserts the juvenile court issued an order granting the maternal grandparents control over any and all visitation on October 9, 2024, the same day that J.S. filed her second section 388 petition. The record on appeal, however, does not include any orders or rulings made by the juvenile court on October 9, 2024. Rather, it reflects that on October 11, 2024, the juvenile court denied J.S.'s second petition on the ground that "the court ordered it's in [M.H.'s] best interest for the current

On October 24, 2024, J.S. filed a notice of appeal from the order denying her second section 388 petition.

## VII. J.S.'s third section 388 petition

On October 24, 2024, J.S. filed a third section 388 petition. She requested that the juvenile court change its order authorizing M.H.'s caregivers to determine visitation because it was made without a proper evaluation of the evidence, including the prior order granting J.S. unmonitored visits with M.H. J.S. repeated that, following the termination of parental rights, DCFS gave M.H.'s caregivers the authority to determine whether she would have visitation, and as a result, J.S. had not had any visits with M.H. since October 2023. J.S. asserted that enforcing the prior visitation order would ensure M.H. "continue[d] to receive the benefit from his relationships with both his maternal and paternal families."

On October 28, 2024, the juvenile court summarily denied J.S.'s third section 388 petition, again finding that the proposed change would not promote M.H.'s best interest.

On November 21, 2024, J.S. filed a notice of appeal from the order denying her third section 388 petition.

## VIII. Postappeal orders

We grant DCFS's request to take judicial notice of a minute order issued by the juvenile court during the pendency of this appeal. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) The order reflects that, on January 3, 2025, the juvenile court terminated

---

caregivers/prospective adoptive parents to control any [and] all visitation decisions." In any event, the exact date of the order granting the maternal grandparents control over visitation is not dispositive to this appeal.

10

its jurisdiction over M.H. because the child's adoption by the maternal grandparents was finalized.

**DISCUSSION**

J.S. contends the juvenile court abused its discretion when it summarily denied her second and third section 388 petitions for visitation with M.H. and instead granted the maternal grandparents the authority to decide whether any visitation would occur. DCFS claims J.S.'s appeal is moot because jurisdiction over M.H. has since been terminated due to the child's adoption by the maternal grandparents, and in any event, the juvenile court acted within its discretion in denying each petition. Even assuming, without deciding, that the termination of dependency jurisdiction has rendered J.S.'s appeal moot, we exercise our discretion to reach the merits of her appeal under the circumstances of this case. (*In re D.P.* (2023) 14 Cal.5th 266, 282.) Considering the merits, we conclude the juvenile court did not abuse its discretion in denying J.S. section 388 relief.

## I. Governing law

"Grandparents' rights to court-ordered visitation with their grandchildren are purely statutory." (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 219.) In dependency proceedings, section 361.2, subdivision (i), governs a grandparent's right to visitation when a child is removed from parental custody and jurisdiction is ongoing. (*In re R.M.* (2025) 111 Cal.App.5th 119, 131 (*R.M.*); *In re J.P.* (2019) 37 Cal.App.5th 1111, 1118.) It provides that "[i]f the court has ordered removal of the child from the physical custody of the child's parents . . ., the court shall consider whether the family ties and best interest of the child will be served by granting visitation rights to the child's grandparents." (§ 361.2, subd. (i).) Additionally, section 362.4

11

authorizes the court to order visitation between a child and a grandparent when terminating jurisdiction and issuing a custody order (commonly referred to as an exit order).  (*In re J.T.* (2014) 228 Cal.App.4th 953, 960 (*J.T.*).)  It states that "[i]f the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's attainment of the age of 18 years, and . . . an order has been entered with regard to the custody of that minor, the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child." (§ 362.4, subd. (a).)

Section 388 permits the juvenile court, "upon grounds of change of circumstance or new evidence, . . . to change, modify, or set aside any order of court previously made . . . ."  (§ 388, subd. (a)(1).)  The statute allows the modification of an order only when a parent or other person with an interest in a dependent child establishes that (1) changed circumstances or new evidence exists; and (2) the proposed modification would promote the best interest of the child.  (*In re Christopher L.* (2022) 12 Cal.5th 1063, 1080.)  "The change of circumstances or new evidence 'must be of such significant nature that it requires . . . modification of the challenged prior order.' "  (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.)  "In assessing the best interests of the child, 'a primary consideration . . . is the goal of assuring stability and continuity.' "  (*Id.* at p. 616.)  Furthermore, the petitioner "must make a prima facie showing of entitlement to relief in order to trigger the right to an evidentiary hearing on the petition."  (*In re R.F.* (2023) 94 Cal.App.5th 718, 728.)  " 'In determining whether the petition makes the necessary showing, the court may consider

the entire factual and procedural history of the case.' " (*In re Damari Y.* (2023) 92 Cal.App.5th 699, 708.)

We review the summary denial of a section 388 petition for abuse of discretion. (*R.M.*, *supra*, 111 Cal.App.5th at p. 137.) " '[W]e will not disturb the decision of the [juvenile] court unless [it] exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination.' " (*Ibid*.)

## II. The juvenile court did not abuse its discretion in summarily denying J.S.'s section 388 petitions

J.S. filed her second and third section 388 petitions in October 2024, approximately one year after the juvenile court terminated parental rights over M.H. and designated the maternal grandparents as the child's prospective adoptive parents. In each section 388 petition, J.S. asked the juvenile court to enforce its February 2023 order granting her unmonitored visitation because the maternal grandparents had not allowed any in-person visits since October 2023, shortly after parental rights were terminated. In summarily denying the petitions, the juvenile court declined to enforce its prior visitation order or to issue a new order granting J.S. any visitation rights. The court instead determined that it was in M.H.'s best interest for the prospective adoptive parents "to control any [and] all visitation decisions."

Given the factual and procedural history of this case, the juvenile court reasonably could find that J.S. failed to make a prima facie showing of entitlement to relief in each section 388 petition. " 'A "prima facie" showing [under section 388] refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.' " (*R.M.*, *supra*, 111 Cal.App.5th at p. 137.) "Although

13

the juvenile court must liberally construe the petition in favor of its sufficiency [citation], 'the allegations must nonetheless describe specifically how the petition will advance the child's best interests.' " (*Ibid*.)  Thus, where a grandparent files a section 388 petition seeking the reinstatement of visitation with a dependent child, vague or conclusory allegations that the child would benefit from maintaining a relationship with the grandparent are insufficient to trigger an evidentiary hearing.  (*Id*. at p. 138.)

In her petitions, J.S. alleged in general terms that it was in M.H.'s best interest to have "[a] balanced relationship with both sides of his family," and that not "preserving the relationships between both families can be detrimental to the child."  She also alleged that DCFS's failure to ensure compliance with the prior visitation order resulted in J.S. not seeing M.H. for almost a year, "causing emotional harm to [] both" of them.  J.S. did not, however, allege with any specificity how M.H. had been harmed by the lack of continued visits with her, or how the child's best interests would be served by resuming visitation at a late stage in the dependency proceedings.  At the time J.S. filed her section 388 petitions in October 2024, M.H. was two years old and had been in the care of his maternal grandparents since his birth.  It had been over a year since the juvenile court ordered adoption by these caregivers as the child's permanent plan, and by October 2024, the adoption process was close to completion.  Indeed, less than three months later, on January 3, 2025, the juvenile court terminated jurisdiction over M.H. because the adoption by the maternal grandparents had been finalized.

In challenging the denial of her section 388 petitions, J.S. argues the juvenile court abused its discretion in failing to issue an order for postadoption visitation with M.H.  J.S. asserts that,

14

given the maternal grandparents' refusal to allow any visits with M.H. since the termination of parental rights, a postadoption visitation order was necessary to ensure that she would have a relationship with her grandson once the adoption became final. In support of this argument, J.S. cites to case law holding that, under section 362.4, the juvenile court has the authority to enter an order for visitation between a child and a nonparent upon terminating dependency jurisdiction, even where the custodial parent objects to such visitation. (*J.T.*, *supra*, 228 Cal.App.4th at p. 960; *In re Robin N.* (1992) 7 Cal.App.4th 1140, 1146 (*Robin N.*); *In re Hirenia C.* (1993) 18 Cal.App.4th 504, 518 (*Hirenia C.*).) These cases, however, are factually distinguishable.

In both *J.T.* and *Robin N.*, the juvenile court ordered visitation for a nonparent as part of an exit order that returned the dependent child to the custody of his or her biological parent upon terminating jurisdiction. (*J.T.*, *supra*, 228 Cal.App.4th at p. 958; *Robin N.*, *supra*, 7 Cal.App.4th at p. 1143.) As explained in *J.T.*, the juvenile court could enter the visitation order over the objection of the biological parent because, unlike a parent in a family law proceeding, a parent in dependency proceeding is not entitled to a presumption of parental fitness. (*J.T.*, at p. 963.) Neither *J.T.* nor *Robin N.* considered the scope of the juvenile court's authority to order visitation in a case where jurisdiction is terminated because the child is adopted. *Hirenia C.* did address the issue of postadoption visitation, and held that, under section 362.4, the juvenile court could enter an enforceable order for visitation with a nonparent over the objection of the child's adoptive parent when terminating jurisdiction. (*Hirenia C.*, *supra*, 18 Cal.App.4th at p. 518.) However, a leading treatise on dependency law has cautioned that "*Hirenia C.* should be viewed

15

as inconsistent with established decisional and statutory law, and with the public policy of this state for closed adoption; it should be questioned, not followed." (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2025) § 2.198[5].)

For purposes of this appeal, we need not decide whether section 362.4 permits the juvenile court to enter a visitation order that remains in effect after the child is adopted and jurisdiction is terminated. Even assuming the juvenile court has such authority under section 362.4, J.S. failed to establish that a postadoption visitation order was warranted in this case. In each of the above-cited cases, the nonparent who was granted visitation rights previously occupied a parental role in the child's life such that the child would be significantly harmed by the termination of that relationship. (*J.T.*, *supra*, 228 Cal.App.4th at pp. 958–959 [affirming visitation order for paternal grandmother where child "spent a substantial part of his life in [her] care" and shared "a very strong bond" with her]; *Robin N.*, *supra*, 7 Cal.App.4th at p. 1145 [affirming visitation order for de facto father who "devoted five continuous years to develop, nurture and maintain a close, bonded relationship" with ex-girlfriend's child]; *Hirenia C.*, *supra*, 18 Cal.App.4th at p. 519 [reversing order denying visitation for adoptive parent's former partner who was "intimately involved in [child's] day-to-day care, nurturance and guidance" for three and a half years and "formed a close, bonded relationship" with her].)

Here, J.S. had regular visitation with M.H. from February to September 2023, including alternating weeklong visits over a period of three months. While J.S. was observed to be loving and attentive toward M.H. during those visits, she never occupied a parental role in the child's life or provided him with day-to-day

16

care over a long-term period. We recognize that J.S. was denied the opportunity to maintain any type of relationship with M.H. once the maternal grandparents stopped allowing visits in October 2023. Although the issue of visitation was never addressed at the section 366.26 hearing, it appears that DCFS incorrectly assumed the court terminated J.S.'s visitation when it terminated parental rights. As a result, DCFS failed to take any action to ensure compliance with the prior visitation order, and instead advised J.S. that she would have to work out visitation with the maternal grandparents. Nevertheless, in ruling on J.S.'s section 388 petitions, the juvenile court had to determine whether it was in M.H.'s best interest to resume court-mandated visits with J.S. as of October 2024 when the petitions were filed. At that point in the proceedings, M.H.'s adoption by the maternal grandparents was close to being finalized, and the child had not seen J.S. for about a year. On this record, we cannot conclude the juvenile court exceeded the bounds of reason in deciding that an order for postadoption visitation was not in M.H.'s best interest.

Finally, we are sympathetic to J.S.'s desire to maintain a bond with M.H. as the child's paternal grandmother. Although we conclude the juvenile court did not abuse its discretion in denying J.S. relief under section 388, nothing in our opinion should be construed as precluding J.S. from seeking appropriate visitation with M.H. in a family law proceeding. (See, e.g., Fam. Code § 3102 [permitting reasonable visitation by a deceased parent's children, siblings, parents, and grandparents where the visitation is in the child's best interest].) Given that the juvenile court has since terminated its jurisdiction over M.H., the family court, rather than the dependency court, is the proper forum for resolving any disputes over postadoption visitation.

17

**DISPOSITION**

The juvenile court's orders denying J.S.'s October 9, 2024 and October 24, 2024 section 388 petitions are affirmed.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

MATTHEWS, J. *

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.